UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NAJA BROWN,**

    **Plaintiff,**

v.

**OHIO YOUTH
ADVOCATE PROGRAM, INC.,**

    **Defendant.**

Case. No. 2:04-cv-122
**JUDGE GREGORY L. FROST**
**Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter is before the Court for consideration of a motion for summary judgment filed by Defendant, Ohio Youth Advocate Program, Incorporated (Doc. # 21), and a motion for summary judgment filed by Plaintiff, Naja Brown (Doc. # 24). Also before the Court is a motion to strike filed by Ohio Youth Advocate Program, Incorporated. (Doc. # 29.) For the reasons that follow, this Court **GRANTS IN PART and DENIES IN PART** the motion to strike, **DENIES** Brown's motion for summary judgment, and **DENIES** Ohio Youth Advocate Program, Incorporated's motion for summary judgment.

### I. Background

From 1999 until 2003, Plaintiff, Naja Brown, was employed by the Ohio Youth Advocate Program ("OYAP") as a treatment coordinator. In December 2002, while employed at OYAP, Brown consulted a doctor about the possibility of having elective gastric bypass surgery. In order to undergo this surgery, she attended required classes and support groups over the course of the following months. After completing these requirements, Brown again visited her doctor on April 25, 2003 for a pre-operative appointment.

There is a factual dispute as to when Brown informed OYAP of her upcoming surgery. Regardless of when she informed her employer, it is undisputed that Brown underwent surgery on May 5, 2005 and was absent from work until she was discharged on May 9, 2003. She experienced complications necessitating readmission on May 13, 2003, after which she underwent additional surgery and remained hospitalized until her discharge on May 20, 2003.

Following her discharge, Brown discovered that she had received two letters from OYAP, one dated May 12, 2003 and the other dated May 19, 2003. The May 12 letter requested information concerning her absence and informed her that her employment would be terminated if she did not provide the requested information by May 16, 2003. The May 19 letter informed her that OYAP was terminating her employment.

On February 13, 2004, Brown responded to her termination by filing a single-count Complaint alleging violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. (Doc. # 1.) Specifically, she asserts that OYAP violated § 2612 by terminating her employment. Both sides have moved for summary judgment. (Docs. # 21, 24.) OYAP has also filed a motion to strike a portion of Brown's summary judgment evidence. (Doc. # 29.) The parties have completed their briefing, and all three motions are now ripe for disposition.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary

2

judgment here if Gregg, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Gregg, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

**B. Analysis**

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for ... a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Sixth Circuit has explained that "to invoke the protection of the FMLA, an employee must provide notice [to the employer] and a qualifying reason for requesting the leave." *Brohm v. JH Properties Inc.*, 149 F.3d 517, 522 (6th Cir. 1998) (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir. 1995)). An employee such as Brown need

3

not specifically mention the FMLA to provide adequate notice. *Id*. Rather, for adequate notice, the employee need only convey information that is reasonably adequate to inform the employer that he is making a request to take leave for a serious health condition that renders him unable to perform the duties of employment. *Id*. This notice requirement helps employers accommodate employee absences for specified family and medical reasons. *Gay v. Gillman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997). Employees should be aware of their requirements of their job as well as the requirements of their employer as to give notice as soon as possible. *Id*. If employees purposely withhold notice of a possible serious health condition, their termination cannot be in violation of the FMLA. *Id.*

In the instant case, OYAP does not contest at this stage that it was an employer under 29 U.S.C. § 2611(4) or that Brown was an "eligible employee" under 29 U.S.C. § 2611(4). (Doc. # 21, at 8.) OYAP also does not contest in its briefing that Brown was entitled to FMLA leave under 29 U.S.C. § 2612(a)(1)(D) for her gastric bypass surgery. The only issue OYAP raises in its motion for summary judgment is whether Brown gave OYAP adequate notice of her intent to take leave as required by 29 U.S.C. § 2612(e)(2)(B).

Section 1612(e)(2)(B) provides that in instances involving foreseeable leave based on planned medical treatment, an employee must "provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave ... except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B). The FMLA-related regulation echoing this notice requirement provides that "[i]f 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change

4

in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). That same regulation explains:

> "As soon as practicable" means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case. For foreseeable leave where it is not possible to give as much as 30 days notice, "as soon as practicable" ordinarily would mean at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee.

29 C.F.R. § 825.302(b). Additionally, in order for notice to be sufficient, the employee should "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). "Once an employer receives sufficient notice that the eligible employee is requesting leave for a FMLA-qualifying reason, the employer bears the burden to gather any additional information necessary for the leave to fall within the FMLA." *Brenneman v. MedCentral Health System*, 366 F.3d 412, 422 (6th Cir. 2004) (*citing Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1998)).

Applying the foregoing law to the facts of this case is initially complicated by a lack of clarity as to when Brown notified OYAP of her intent to take FMLA leave. The record suggests that Brown's May 5, 2003 surgery was scheduled as early as April 25, 2003, but at her deposition, Brown was not certain that this was correct. (Brown Dep. at 53.) Brown admitted, however, that she knew she was going to have the surgery "maybe weeks prior to the actual scheduled date." (Brown Dep. at 50.) Brown was also uncertain as to when she notified OYAP of her intent to take leave. (Brown Dep. at 54.) She testified that she discussed the surgery with supervisors Cindy Donaldson and Terehasa Lee-MChunganji, but she again had no recollection of when such discussions took place or whether she specifically told Donaldson that she would

5

need time off. (Brown Dep. at 55-6.) Donaldson testified that she cannot recall Brown telling her that she had decided to commit to the surgery or any specific time that Brown would need to be absent from work. (Donaldson Dep. at 41-2).

Brown did recall that she had told Lee-MChunganji the surgery date and that she needed time off, as well as that Lee-MChunganji had informed her that Brown had to provide additional information from her doctor. (Brown Dep. at 58- 9.) By affidavit, Lee-MChunganji asserts that Brown spoke with her on May 2, 2003–the Friday before Brown's surgery the following Monday–and that she informed Brown of the need to submit a written leave form and doctor information. (Lee-MChunganji Aff. at 1-2, ¶¶ 3, 5.) Brown admits that she never completed a leave form, citing the fact that one was not available in her specific department. (Brown Dep. at 59-60.)

OYAP argues that a May 2, 2003 notice was not "as soon as practicable," which ordinarily is "notification to the employer within one or two business days of when the need for leave becomes known to the employee." 29 C.F.R. § 825.302(b). Brown has responded to this argument by first filing an April 13, 2005 affidavit in which she states that "[o]n April 21, 2003, I verbally informed my immediate supervisors at OYAP, Ms. Terehasa Lee-MChunngaji, and Ms. Cindy Donaldson, that I would be undergoing surgery and that I would be out for two weeks." (Doc. # 26, Ex. A, at 1 ¶ 2.) Then, in response to a motion by OYAP to strike this paragraph of the affidavit as contradicting Brown's deposition testimony, Brown has submitted a May 19, 2005 affidavit in which she asserts that she informed Donaldson and Lee-MChungaji weeks before May 5, 2003 that she would be having surgery, that she "think[s] that it was around the week of April 21, 2003" that she told her supervisors of the surgery (although she cannot

6

recall the exact date), and that she "meant to say that it was on or near" April 21, 2003 in her prior affidavit. (Doc. # 36, at 2 ¶¶ 5-7.)

It is well settled that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986) *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984). *See also Penny v. United Parcel Post*, 128 F.3d 408, 417 (6th Cir. 1997) (citing *Reid*). Thus, to the extent Brown's affidavits contradict her deposition, the Court is free to disregard those portions of the affidavits.

Here, several of the above-referenced paragraphs of Brown's affidavits contradict her deposition testimony. There is a substantive and a substantial difference between telling someone that you are considering having or are going to have surgery and informing that individual that you would need leave for a specified period of time beginning on a specific date. Although Brown attempts in her memorandum in opposition to the motion to strike to dismiss the discrepancies in her various recollections as to the dater of notification as "immaterial" (Doc. # 34, at 2), this self-serving characterization does not transform her recollections into the consistent account she asserts exists. Neither affidavit merely clarifies deposition testimony that was ambiguous or unclear; Brown clearly testified and intended to testify that she could not recall any specific date of purported notification. Further, Brown has not offered an explanation for the contradictions in recollection, and she does not claim that she was confused by the questions at her deposition. Rather, it is apparent that Brown is simply attempting to change by affidavit her deposition testimony. To permit such action would be to endorse litigation by ambush, inadvertent or otherwise, by enabling a party to claim no recollection of numerous

7

issues when deposed, and then be able to fortuitously assert information to evade summary judgment. The Court declines to endorse such conduct and therefore **GRANTS IN PART** OYAP's motion to strike (Doc. # 29) and **STRIKES** paragraph two of Brown's first affidavit (Doc. # 26, Ex. A, at 1 ¶ 2), as well as her subsequent attempted amendments to that paragraph (Doc. # 36, at 2 ¶¶ 6-7).

Thus, disregarding OYAP's arguments regarding whether Brown complied with its internal notice policies, the extant question is whether a May 2, 2003 notification of intent to take leave is temporally sufficient under the FMLA. Taking into account all the facts and circumstances of this case, no reasonable jury could conclude that Brown gave notice of her intent to take leave as soon as both possible and practical. Further, Brown has not asserted any extenuating circumstances potentially excusing her failure to inform OYAP of her intent to take leave within a few days of April 25, 2003, the date on which she apparently decided to undergo and scheduled her surgery, which could serve to create a factual issue for the jury as to the timing of her notice.

Although it appears that the Sixth Circuit has not directly addressed the issue of temporal sufficiency of notice in instances of foreseeable leave, analogous and persuasive case law convinces this Court that temporal insufficiency should preclude FMLA liability here. *See Brenneman v. MedCentral Health System*, 366 F.3d 412, 424-25 (6th Cir. 2004) (holding in unforeseeable leave case that notice outside of the analogous 29 C.F.R. § 825.303(a) necessary time frame was temporally insufficient); *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997) (upholding summary judgment for defendant where plaintiff had given FMLA notification that was inadequate both substantively *and* temporally); *Horelica v. Fiserve*

*Solutions, Inc.*, 123 S.W.3d 492, 496 (Texas App. 2003) (holding plaintiff–who knew of upcoming May 26 surgery on May 8 but did not inform her employer until May 25–failed to meet the FMLA timing requirement and was consequently not protected under the FMLA). To hold otherwise would render the timing provision of the FMLA and its regulations moot, enabling an employee to invoke leave wholly without regard to the requirements for doing so. But the FMLA requires not just notice of intent to invoke leave, but also timely notice. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 991 (8th Cir. 2005) ("The FMLA also requires that an employee's notice be timely in order for his leave to be covered by the Act"). Ignoring the latter requirement, while beneficial to employees, would contravene the clear and direct framework of the FMLA in a manner that compromises employer rights.

The Court recognizes the parties' dispute over *Cavin v. Honda of America, Mfg., Inc.*, 346 F.3d 713 (6th Cir. 2003). Today's rationale does not contravene the holding of that case. In *Cavin*, the Sixth Circuit addressed whether an employee's failure to comply with an employer's own internal notice procedures meant that the employer could disallow FMLA leave. The court of appeals held that "employers cannot deny FMLA relief for failure to comply with their internal notice requirements." *Id*. at 723. This holding does not mean that the FMLA's own timing-of-notice provisions are meaningless. *Cavin* does, however, inform the instant case insofar as it explains that the content and timing of a notice is a question of fact, while the question of whether the notice satisfied statutory requirements is one of law. *Id*. In light of the necessary striking of Brown's impermissible affidavit provisions, the only evidence of notice supports a May 2, 2003 notification. As a matter of law, such an unexcused late notice violated the FMLA's temporal requirement and, absent a controlling exception, would invalidate

Brown's claim. *See Woods*, 409 F.3d at 991 ("A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave").

The Court recognizes, however, that Brown also argues that waiver and estoppel preclude OYAP from attacking the timeliness of her notice. She asserts that by sending a May 12, 2003 letter that recognized the need for extended leave, requested additional medical information, and asked for the completion of an FMLA application, OYAP "opened the door" for the leave. (Doc. # 26, at 12-3.)

OYAP's motion to strike also targets this letter. The company argues that the Court must strike the May 12 and 16, 2003 letters Brown has submitted because her April 13, 2005 affidavit fails to authenticate the letters as provided for by Fed. R. Civ. P. 56(e). That rule affords the Court the ability to accept supplemental affidavits. The Court thus accepts Brown's May 19, 2005 affidavit, which authenticates the letters, as just such a supplemental affidavit and concludes that the letters are properly authenticated.

Having considered the letters in question, the Court concludes that at least the May 12, 2003 letter constitutes an affirmative act by OYAP that fairly precludes OYAP from now arguing that Brown's notice was untimely so as to preclude potential liability. Such a conclusion finds some support in *Woods*, where the Eighth Circuit concluded that it did not have to decide whether an employee's notice to its employee was temporally sufficient because the employer had given the employee "further opportunity to provide substantiation for [the] unauthorized absence." *Id.*, 409 F.3d at 992.

Similarly, OYAP, which does not contest that it knew that FMLA leave was involved

here, seeks to evade potential liability on a technicality in the timing of Brown's notification. But OYAP, like the employer in *Woods*, gave Brown additional time to substantiate her claim to leave. If OYAP intended to contest the timing and not the substance of Brown's initial request, then OYAP's asking her to supply medical information and to complete an FMLA form makes no sense if the company did not perceive that such leave was potentially available to her. In light of these facts, a reasonable juror could conclude only that OYAP's actions meant that it regarded the timing of the notice as sufficient to activate its burden of inquiry. Although OYAP's actions cannot turn Brown's untimely notification timely, it can prevent OYAP from prevailing on this narrow legal argument based not on estoppel–there is arguably no detrimental reliance here–but based on the concept of waiver or forfeiture. *Cf. Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 494 (8th Cir. 2002) (collecting cases supporting employer estoppel in FMLA context); *Banks v. Armed Forces Bank*, 313 F. Supp. 2d 1095, 1108 (D. Kan. 2004) (finding estoppel inapplicable in FMLA case because the plaintiff could not demonstrate detrimental reliance).

This is not to say, however, that Brown is entitled to the summary judgment she seeks or even eventual relief under the FMLA. She must still prove her case, and there are abundant factual questions about most of the remaining elements of her claim. *See Cavin*, 346 F.3d 713 (6th Cir. 2003); *Bradley v. Mary Rutan Hosp. Assoc.*, 322 F. Supp. 2d 926 (S.D. Ohio 2004) (both describing analytic framework of FMLA claim). Today's narrow holding simply precludes OYAP from prevailing on (or even contesting later) only the specific issue of the timing of Brown's notification to OYAP.

This is also not to say that to avoid forfeiture employers must immediately elect either to terminate an employee or deny leave in instances of suspected untimely notification by the

employee. Rather, although an employer may pursue either of the foregoing options, the most reasonable action would be to grant conditional leave subject to further permissible inquiry, all the while expressly reserving the right to contest the timing of the employee's notification if the facts and circumstances confirm or unexpectedly indicate temporally insufficiency.

In summary, Brown's motion for summary judgment fails on the grounds that genuine issues of material fact exist. These disputed issues include but are not limited to whether OYAP carried its burden of seeking substantiating information and whether Brown met her related obligations. Similarly, OYAP's motion for summary judgment turns not on the substance of Brown's notification, but on the timing of that notification. Assuming *arguendo* that Brown provided substantively sufficient notice of her intent to take qualifying leave, she did not provide temporally sufficient notice. Considering that her surgery was scheduled on April 25, 2003, she should have informed her employer within one or two business days of that appointment. By waiting until May 2, the Friday before her Monday surgery, Brown fell well short of this benchmark. But because OYAP acted in such a manner as to accept the notice as timely and in fact acted on the notice, the company cannot obtain here judgment as a matter of law that Brown's timing precludes her FMLA claim.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** OYAP's motion to strike (Doc. # 29), **DENIES** OYAP's motion for summary judgment (Doc. # 21), and **DENIES** Brown's motion for summary judgment (Doc. # 24).

**IT IS SO ORDERED.**

    /s/  Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE